IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**WALDEMAR OJEDA-RAMOS,**<br>Defendant. | **INFORMATION**<br><br>CRIMINAL NO. 25-405-FAB<br><br>VIOLATIONS:<br>COUNTS 1-2: 21 U.S.C. § 331(c)<br>COUNTS 3-4: 21 U.S.C. § 331(k)<br><br>(FOUR COUNTS) |

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The FDA regulated, among other things, the manufacture, labeling, and distribution of veterinary drugs shipped and received in interstate and foreign commerce according to the provisions of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 *et seq.* Among the purposes of the FDCA was to ensure that veterinary drugs were safe and effective. 21 U.S.C. § 393(b)(2).

2. The term "label" meant a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k). The term "labeling" was defined as all labels and other written, printed, or graphic matter upon any article or any of its containers or wrappers, or accompanying such article. 21 U.S.C. § 321(m).

3. The FDCA defined "drugs," among other things, as articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or animals; and articles (other than food) intended to affect the structure or any function of the body of man or

other animals. 21 U.S.C. § 321(g)(1)(B) and (C).

4.  A "new animal drug" meant, among other things, any drug intended for use for animals other than man, the composition of which was such that such drug was not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof. 21 U.S.C. § 321(v).

5.  A new animal drug was, with respect to any particular use or intended use of such drug, deemed "unsafe" under 21 U.S.C. § 351(a)(5) unless, among other things, it was the subject of FDA approval,[1] conditional approval, index listing, or emergency use authorization. 21 U.S.C. § 360b(a)(1). A new animal drug was adulterated if it was "unsafe" under the definition. 21 U.S.C. § 351(a)(5).

6.  "Prescription animal drugs" and "veterinary prescription drugs" were drugs which, because of their toxicity or other potentiality for harmful effects, the methods of their use, or collateral measures necessary for their use, were not safe for animal use except under the professional supervision of a licensed veterinarian or which were limited by an approved New Animal Drug Application (NADA), a conditionally-approved application, or an index listing, to use under the professional supervision of a licensed veterinarian, and were to be dispensed only by or upon the lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice. 21 U.S.C. § 353(f)(1)(A).

7.  The act of dispensing prescription animal drugs without a lawful written or oral

---

[1] FDA approvals were not for the molecular entity itself (i.e., the active pharmaceutical ingredient), but included the specific product makeup and labeling of the product for the applicant's particular intended use. It is important to note that while xylazine was the active pharmaceutical ingredient in some FDA-approved prescription animal drugs, these approvals did not mean that *all* animal drugs containing xylazine were FDA-approved.

order of a licensed veterinarian in the course of the veterinarian's professional practice was deemed an act which resulted in the drug being misbranded while held for sale. 21 U.S.C. § 353(f)(1)(C).

8. Xylazine was a non-opiate sedative, analgesic, and muscle relaxant commonly known as "tranq" which was the active pharmaceutical ingredient in an animal drug authorized in the United States for veterinary use according to the United States Food and Drug Administration (FDA). Xylazine was used as an analgesic and as a preanesthetic to local and general non-human anesthesia, and as such, any animal drugs that contained xylazine were prescription drugs, available only by or on the order of a licensed veterinarian. 21 U.S.C. § 353(f)(1)(A); 21 C.F.R. §522.2662.

9. While xylazine was not approved for use in humans, it was detected in the illicit drug supply and in human drug overdoses. Xylazine was not shown to be safe for use in humans and resulted in serious and life-threatening side effects. As a result, FDA issued Import Alert 68-20 on February 28, 2023 to prevent finished drug products containing xylazine from entering the United States market.

10. Defendant WALDEMAR OJEDA RAMOS ("OJEDA RAMOS") resided in Puerto Rico and owned and operated a business in Mayagüez, Puerto Rico from his private residence. He sold animal products such as animal feed and animal drugs.

11. OJEDA RAMOS was not a licensed veterinarian.

12. In or about 2023, OJEDA RAMOS obtained vials of animal drugs purporting to contain xylazine in foreign commerce which were not FDA approved and delivered the vials for sale to at least one individual without a valid prescription by a licensed veterinarian.

## COUNTS ONE AND TWO

### Delivery of Adulterated Drugs for Pay
### 21 U.S.C. § 331(c)

13. The allegations in paragraphs 1-12 are incorporated by reference.

14. On or about the dates set forth below, in the District of Puerto Rico and elsewhere within the jurisdiction of the Court, the defendant,

**WALDEMAR OJEDA RAMOS,**

received adulterated drugs in interstate commerce and delivered them for pay or otherwise; namely animal drugs that were adulterated within the meaning of 21 U.S.C. § 351(a)(5), in that the drugs were unsafe animal drugs and not otherwise FDA-approved.

| Count | Approximate Date | Description |
|---|---|---|
| 1 | March 30, 2023 | Delivered and sold ten (10) 50 ml vials of adulterated animal drugs for payment. One vial was broken. Five of the vials were trademarked as PROCIN and manufactured in Mexico by PiSA Agropecuaria, S.A. DE C.V. The other five vials were trademarked as XILAZIL and were distributed by Chinfield S.A. in Argentina. |
| 2 | October 4, 2023 | Delivered and sold nine (9) 50 ml vials of adulterated animal drugs for payment. Seven of the vials were trademarked as Xilacina and manufactured in Mexico by Laboratorios Norvet, S.A. DE C.V. The other two vials were trademarked as XILAPET 10 which is manufactured in Mexico. |

All in violation of 21 U.S.C. §§ 331(c) and 333(a)(1).

## COUNTS THREE AND FOUR

### Misbranding of Drugs
### 21 U.S.C. §331(k)

15. The allegations in paragraphs 1-13 are incorporated by reference.

16. On or about the dates set forth below, in the District of Puerto Rico and

elsewhere within the jurisdiction of the Court, the defendant,

**WALDEMAR OJEDA RAMOS,**

did cause acts to be done to prescription animal drugs, while they were held for sale, after shipment in interstate commerce, such acts resulted in the animal drugs being misbranded within the meaning of 21 U.S.C. § 353(f)(1)(A), in that they were dispensed without a prescription or lawful order of a licensed veterinarian.

| Count | Approximate Date | Description |
|---|---|---|
| 3 | March 30, 2023 | Delivered and sold ten (10) 50 ml vials of an animal drug purporting to contain xylazine without a valid prescription. |
| 4 | October 4, 2023 | Delivered and sold nine (9) 50 ml vials of an animal drug purporting to contain xylazine without a valid prescription. |

All in violation of 21 U.S.C. §§ 331(k) and 333(a)(1).

W. STEPHEN MULDROW
United States Attorney

Seth A. Erbe
Assistant United States Attorney
Chief, Financial Fraud and Public Corruption Unit

Kyrsten L. Melander
Special Assistant United States Attorney